**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Sabby Volatility Warrant Master Fund, Ltd. and Sabby Healthcare Master Fund, Ltd. | 18-CV-5224 (GBD) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | |
| U.S. Bank National Association, | |
| Defendant. | |

Plaintiffs Sabby Volatility Warrant Master Fund, Ltd. and Sabby Healthcare Master Fund, Ltd. (together the "Plaintiffs") by their attorneys, Olshan Frome Wolosky LLP, as and for their First Amended Complaint, allege as follows:

**PRELIMINARY STATEMENT**

1. Plaintiffs are holders of notes in an aggregate principal amount of $2.75 million, issued by Orexigen Therapeutics, Inc. ("Orexigen") pursuant to an Indenture (the "Indenture") dated as of March 21, 2016 concerning 0% Convertible Senior Secured Notes due 2020 (the "Notes"). A copy of the Indenture is attached as Exhibit A hereto. Defendant U.S. Bank National Association (the "Indenture Trustee" or the "Defendant") is the Trustee and Collateral Agent under the Indenture.

2. To comply with the Trust Indenture Act and to protect the overarching principle that each Noteholder (i.e., a Holder of a Note), including Plaintiffs, is treated equitably and ratably, the Indenture provides that the Defendant cannot take certain actions absent each Noteholder's affirmative consent. Among such prohibitions are changes to the ratable treatment of the Notes, any express subordination in the right of payment to any other Indebtedness of

Orexigen; the change in the ranking of the Notes; and the impairment of the right of any Holder to receive payment of principal and interest.

3.      Acting at the direction of a majority of Noteholders, the Indenture Trustee offered certain Noteholders the opportunity enter into a financing agreement with Orexigen. Through a transaction called the "Roll-Up" (defined below), in exchange for their participation, these participating Noteholders received superior priority "priming" liens and claims which rank senior in priority and treatment to Plaintiffs Notes. In violation of Plaintiffs' consent rights under the Indenture and the Trust Indenture Act, the Indenture Trustee allowed and facilitated the subordination of the Plaintiffs' Notes to those that received the benefit of the Roll-Up, without the consent of the Plaintiffs.

4.      In June 2018, Plaintiffs advised the Indenture Trustee that they would like to participate in the Roll-Up. At the direction of a majority in interest of the Noteholders, the Indenture Trustee has refused to allow Plaintiffs to join the Roll-Up.

5.      While the Indenture Trustee claims to have provided Plaintiffs a March 15, 2018 notice (the "Roll-Up Notice") of an ability to participate with other Noteholders, the Indenture Trustee did not mail the Roll-Up Notice to the correct address to the Plaintiff. Plaintiff did not receive the Roll-Up Notice until after its June 2018 inquiry. In any event, pursuant to the Indenture and the Trust Indenture Act, the refinancing transactions and the Roll-Up required Plaintiffs' affirmative consent, which the Plaintiffs have not provided.

6.      Orexigen has entered into a purchase agreement for the sale of its business, which agreement is scheduled to close in July 2018. On account of the Roll-Up, the participating Noteholders will receive a priority return on their Notes via payment on the Roll-Up loan from

the proceeds of the sale. Conversely, the Plaintiffs are at risk to receive nothing, having been subordinated to the Roll-Up loan.

7. Plaintiffs bring this action for specific performance to require the Indenture Trustee to allow Plaintiffs to fully participate in the Roll-Up loan. Alternatively, Plaintiffs seek damages for the breach of the Indenture and of the Trust Indenture Act.

## JURISDICTION AND VENUE

1. The United States District Court for the Southern District of New York has jurisdiction over this matter pursuant to 15 §§ U.S.C. 77vvv(b) and 77(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of the Cayman Islands as plaintiffs, and a United States national banking association with a principal place of business in Minnesota as defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2). The parties have consented to venue in this District in the underlying Indenture.

## PARTIES

3. Plaintiffs Sabby Volatility Warrant Master Fund, Ltd. and Sabby Healthcare Master Fund, Ltd. are each Cayman Island exempt companies with addresses of c/o Sabby Management, LLC, 10 Mountainview Road, Suite 205, Upper Saddle River, New Jersey, 07458.

4. Defendant U.S. Bank National Association is national banking association organized and existing under the laws of the United States with its principal place of business of 60 Livingston Ave, EP-MN-WS1D, St. Paul, Minnesota 55107.

4680194-1

## FACTUAL BACKGROUND

5.      At all relevant times, Plaintiffs are and have been the Holders of Notes (as defined in the Indenture) in the aggregate principal amount of $2,750,000, issued pursuant to the Indenture.

### A.  The Indenture

6.      The Indenture requires that each Noteholder receive equal and ratable treatment on account of their respective Notes.

7.      Section 4.21 of the Indenture requires that the Notes shall remain "first-priority . . . without any preference among themselves."

8.      Section 4.22 of the Indenture prohibits actions that would result in the impairment of Holders' security interests.

9.      Section 6.05 of the Indenture provides that payments to Holders on account of the Notes must be made "ratably."

10.     Section 6.06 of the Indenture provides, among other things, that it is:

[u]nderstood and intended, and being expressly covenanted by the taker and Holder of every Note with every other taker and Holder and the Trustee that no one or more Holders shall have any right in any manner whatever by virtue of or by availing of any provision of this indenture to affect, disturb or prejudice the rights of any other Holder, or to obtain or seek to obtain priority or preference to any other such Holder, or to enforce any right under this Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all Holders (except as otherwise provided herein). For the protection and enforcement of this Section 6.06, each and every Holder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

11.     Among other things, Section 10.02 of the Indenture provides that, notwithstanding the consent of at least a majority of the aggregate principal amount of the Notes then outstanding, "without the consent of each Holder of an outstanding Note affected" no such amendment, modification or supplemental indenture by the Trustee or otherwise shall:

4

(e) impair[s] the right of any Holder to receive payment of principal of and interest on such Holder's Notes on or after the due dates therefore . . .;

. . . (g) change the ranking of the Notes or any Note Guarantee;

. . . (k) make any change in the provisions in this Indenture dealing with the applicable of proceeds of Collateral that would adversely affect the Holders of the Notes in any respect . . . ; or

. . . (m) expressly subordinate the Notes or any Note Guarantee in right of payment to any other Indebtedness[1] of the Company[2] or any Guarantor (other than in accordance with the express terms of this Indenture and the other Notes Documents).

## B. Orexigen's Chapter 11 Filing and the Roll-Up

12.     Orexigen filed for voluntary relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 12, 2018 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  Orexigen's chapter 11 case is currently pending in the Bankruptcy Court.

13.     Upon information and belief, on or about March 15, 2018, at the direction of a majority of the Noteholders, the Indenture Trustee sent the Roll-Up Notice to certain Holders (as defined in the Indenture) of the Notes. A copy of the Roll-Up Notice is attached as Exhibit B hereto.

14.     Among other things, the Roll-Up Notice notified recipients of Orexigen's chapter 11 filing.  It also stated that:

Certain Holders (the "DIP Lenders") have agreed, in connection with the Bankruptcy Case and subject to the approval of the Court, to provide the Debtor with debtor-in-possession financing pursuant to section 364 of the Bankruptcy Code in a principal amount of up to $70,350,000 comprised, among other things, of (i) new money term loans in an aggregate amount of up to $35,000,000, and (ii) a roll-up of $35,000,000 in aggregate principal amount of the Notes (the "DIP Financing"). A final hearing to approve the DIP Financing been scheduled for April 5, 2018 at 1:00 p.m,, (prevailing Eastern time). The DIP Lenders have

---

[1] "Indebtedness" is broadly defined in the Section 1.01 of the Indenture and is broadly defined to include all debt.
[2] "Company" under the Indenture means Orexigen.

indicated that other Holders will be provided with an opportunity to participate in the DIP Financing. Any Holder that wishes to have more information about the DIP Financing should contact Bennett Murphy, Esq. of Quinn Emanuel Urquhart & Sullivan, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 or by email at bennettmurphy@quinnemanuel.com, no later than March 29, 2018. The Trustee makes no recommendation or representation regarding the DIP Financing.

15.     Plaintiffs' notice address pursuant to the Indenture and subsequent communications was c/o Sabby Management, 10 Mountainview Road, Suite 205, Upper Saddle River, New Jersey 07458. For reasons unknown to the Plaintiffs, and in violation of the notice provisions of Section 19.03 of the Indenture, instead (as set forth in Exhibit C) Defendant mailed, via overnight mail, the Roll-Up Notice to Merrill Lynch, and the Roll-Up Notice was delivered to an address in New York (the "Security Depository Address") as follows:

Bank of Americas Merill [sic] Lynch
Sabby Volatility Warrant
222 Broadway, 11th Floor
Attn: Miguelina Seda
New York NY 10038-2509

16.     The Indenture Trustee obtained the Security Depository Address through a March 17, 2016 email communication between Susan Walker, Esq., acting on behalf of the Indenture Trustee, and John Hart, Esq. acting as counsel to the Plaintiffs (the "Security Depository Address Email"). Through the Security Deposit Address email, Mr. Hart provided the Security Depository Address as "the address for delivery of securities of each Sabby fund."

17.     The Security Deposit Address is not the notice address under the Indenture.

18.     On March 29, 2016, on behalf of the Indenture Trustee, Ms. Walker sent Robert Grundstein, COO and General Counsel of the Plaintiffs' management firm, an email which asked on behalf of the Indenture Trustee for tax forms and the "[A]ddress to which you'd like any notices sent." On that same date, Mr. Grundstein responded via email: "Attached please

6

find W-8IMY for each Sabby fund. Wire instructions are below. Please send notices to me c/o Sabby Management – my address is in my signature."

19.     The attached W-8IMY forms each contained the following address:

c/o Sabby Management
10 Mountainview Road, Suite 205
Upper Saddle River, NJ 07458

20.     Plaintiffs did not receive the misaddressed Roll-Up Notice. Rather, Plaintiffs did not learn of the Roll-Up Notice or the offer contained therein until June 5, 2018.

21.     On April 13, 2018, the Bankruptcy Court entered its Final Order (I) Approving Debtor-In-Possession Financing Pursuant to 11 U.S.C. §§ 105(A), 362, and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 and Local Bankruptcy Rule 4001-2; (II) Authorizing Use of Cash Collateral Pursuant To 11 U.S.C. §§ 105, 361, 362 and 363 of the Bankruptcy Code; (III) Granting Adequate Protection And Super-Priority Administrative Claims; and (IV) Granting Related Relief (the "Final DIP Order").

22.     Among other things, the Final DIP Order approved on a final basis, Orexigen's entry into that certain Debtor in Possession Credit and Security Agreement dated as of March 12, 2018, by and among Orexigen, as Borrower, Wilmington Trust National Association, as DIP Administrative Agent, and each of the DIP Lenders from time to time party thereto (the "DIP Credit Agreement").

23.     Section 2.1 of the DIP Credit Agreement provides in pertinent part:

During the Availability Period, subject to Section 2.2, the DIP Lenders agree to and shall make available to the Borrower: (i) new money term loans in an aggregate amount of up to $35,000,000 (collectively, the "New Money Loans"), (ii) Roll-Up Loans in an aggregate amount of $35,000,000 (the "Roll-Up Facility"), and (iii) the Upfront Fee, which shall be approved by the Interim DIP Order and deemed fully earned on the Closing Date and shall be paid in-kind on

7

the Closing Date by being capitalized and added ratably to the outstanding principal amount of each DIP Lender's DIP Loans on the Closing Date (in the same percentage as such DIP Lender's pro rata share of the New Money Loan Commitments on the Closing Date and as set forth on Schedule 1(A) hereto) and shall constitute DIP Loan principal for all purposes under this Agreement and the Chapter 11 Orders (collectively, the "DIP Facility").

24.     The Roll-Up Loans are described in Orexigen's motion to approve the DIP Credit Agreement as filed with the Bankruptcy Court as follows:

> As detailed above, in consideration for providing the New Money Loan Commitments, Sections 2.1 and 2.2 of the DIP Loan Agreement provide for Roll-Up Loans that implicate Local Rule 4001-2(a)(i)(E). An amount equal to the amount of New Money Loans borrowed under the Interim DIP Facility will be "rolled-up" dollar-for-dollar on a final basis at the same time that such New Money Loans are funded, with the remainder of the Roll-Up Facility "rolled-up" immediately upon entry of the Final DIP Order.
>
> ***
>
> The Roll-Up Loans are necessary because the DIP Lenders required the Roll-Up Loans as part of the DIP Facility and would not have agreed to provide the new cash funding thereunder without it. In addition, the Roll-Up Loans are reasonable because the one-to-one (1:1) ratio of Roll-Up Loans to New Money Loans is in line with or below other approved roll-up loans in this district.

25.     Orexigen made Roll-Up Loans on account of the Notes.  Only those Holders who committed to pay "New Money Loans" were entitled to participate in the Roll-Up Loans (the "Participating Holders").  Schedule 1 to the DIP Credit Agreement lists the name, dollar amount and percentages of the original Participating Holders (the "Original Holders").

26.     Upon information and belief, at the direction of the majority of Noteholders, through the Roll-Up Notice, the Indenture Trustee arranged for the sale of participation interests in the Roll-Up Loans from the Original Holders to the Participating Holders on account of the Participating Holders' interests in the Roll-Up Loans.

27.     Upon information and belief, Holders of over 95% of the Outstanding Notes elected to directly or indirectly participate in the Roll-Up. Plaintiffs would have participated if given notice and have advised the Defendant that they still wish to do so.

28.     The Roll-Up Loans constitute "DIP Obligations" under the DIP Credit Agreement.

29.     To secure the DIP Obligations, including the Roll-Up Loans, in violation of the Indenture, under Section 8.01 of the DIP Credit Agreement, Orexigen granted the Participating Holders liens on the DIP Collateral (as defined therein) as further set forth therein.

30.     Subject to certain exceptions, under section 8.02 of the DIP Credit Agreement, in violation of the Indenture, pursuant to Bankruptcy Code section 364(c)(1), Orexigen granted the Participating Holders super-priority claims on account of the DIP Obligations including the Roll-Up Loans, and pursuant to Bankruptcy Code sections 364(c)(2)-(c)(4), Orexigen granted the Participating Holders super-priority liens on the DIP Collateral.

31.     In violation of the Indenture, Paragraph 15 and 21 of the Final DIP Order, respectively, ratified sections 8.01 and 8.02 of the DIP Credit Agreement by granting the Participating Holders super-priority liens and claims set forth therein.

32.     By elevating the collateral liens and claim priority status of the Roll-Up Loans to Plaintiffs' Notes, the Final DIP Order and the DIP Credit Agreement violated the Indenture and the Trust Indenture Act because they caused a preference in rank and priority of the Roll-Up Loans by "priming" and subordinating the Plaintiffs' Notes.

33.     By elevating the collateral and claim priority status of the Roll-Up Loans to Plaintiff's Notes, the Final DIP Order and the DIP Credit Agreement violated the Indenture and

4680194-1

the Trust Indenture Act because they violated Plaintiffs' right thereunder to be paid ratably on account of their Notes with the Holders of the Roll-Up Loans on account of the Roll-Up Loans.

34.  By elevating the collateral and claim priority status of the Roll-Up Loans to Plaintiff's Notes, the Final DIP Order and the DIP Credit Agreement violated the Indenture and the Trust Indenture Act because, without Plaintiff's consent they:

(a) Impaired the right of Plaintiffs to receive payment of principal of and interest on account of their Notes;

(b) changed the ranking of the Plaintiffs' Notes or any Guarantee;

(c) effectively changed the provisions in the Indenture dealing with the application of the proceeds of Collateral that adversely affected the Plaintiffs; and

(d) expressly subordinated the Plaintiffs' Notes in right of payment to the Roll-Up Loans.

35.  At the direction of the majority in interest of Noteholders, Defendant facilitated and caused the violations of the Indenture and of the Trust Indenture Act as set forth in Paragraphs 21-31 hereto.

## C.  The Sale

36.  On April 23, 2018, the Bankruptcy Court entered an order approving bidding procedures for the sale of substantially all of Orexigen's assets to Nalproprion Pharmaceuticals, Inc, ("NPI") or a higher or better bidder (the "Sale").  On June 28, 2018, the Bankruptcy Court entered an order approving the Sale to NPI.

37.  The Sale anticipates a Closing Date of no later than July 13, 2018.  The Sale will result in the payment to Participating Holders on account of the Roll-Up Loans.  Conversely, because of their newly subordinated position, the Sale may result in no recovery to the

4680194-1

Plaintiff's on account of their Notes, thus violating the ratable distribution provisions of the Indenture.

## FIRST CLAIM FOR RELIEF

### (Specific Performance Under the Indenture)

38.     Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 37 above as if fully set forth herein.

39.     Defendant has an obligation under the Indenture to treat Plaintiffs' Notes equitably and ratably.  Defendant has breached this obligation. Acting at the direction of the majority of Noteholders, Defendant refuses to honor this obligation. Because of the terms of the Indenture, however, Defendant must allow Plaintiff the opportunity to fully participate in the Roll-Up Loans on a ratable basis.

40.     Absent relief sought herein, Plaintiffs have no adequate remedy at law on account of Defendant's breach.

41.     Therefore, Plaintiffs seek judgment of specific performance to require the Defendant to allow Plaintiffs to fully participate in the Roll-Up Loans in order that the Plaintiff receive a distribution pro rata with the Participating Holders.

## SECOND CLAIM FOR RELIEF

### (Violation of the Trust Indenture Act of 1939)

42.     Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 41 above as if fully set forth herein.

43.     The Indenture is an Indenture within the meaning of the Trust Indenture Act of 1939, as amended, 15 U.S.C. §§ 77aaa-77bbbb.

11

44.     Section 316(b) of the Trust Indenture Act makes clear that Plaintiffs' rights to receive payment on the Notes, or to sue for recovery on the Notes, are absolute rights that may not be impaired without Plaintiffs' consent. The Act states in relevant part:

> [T]he right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security . . . or to institute suit for the enforcement of any such payment . . . shall not be impaired or affected without the consent of such holder[.]

45.     Moreover, the Indenture incorporates the Trust Indenture Act by providing for the equal and ratable treatment of all Notes issued thereunder through, without limitation, Sections 4.21, 4.22, 6.05, 6.06 and 10.02 of the Indenture.

46.     By facilitating the Roll-Up Loans without notice to, or consent by, Plaintiffs, Defendant breached Section 316 of the Trust Indenture Act.

47.     By virtue of the Defendant's breach, Plaintiffs have been damaged in an amount to be determined at trial, but at least $1,000,000, plus accrued interest, attorneys' fees, and costs.

## THIRD CLAIM FOR RELIEF

### (Breach of the Indenture)

48.     Plaintiffs repeat and realleges all of the allegations set forth in paragraphs 1 through 47 above as if fully set forth herein.

49.     Without limitation, Defendant breached Sections 4.21, 4.22, 6.05, 6.06 and 10.02 of the Indenture, by facilitating the Roll-Up Loans without consent by Plaintiffs and regardless of any alleged sufficiency of the notice to the Plaintiffs.

50.     In addition, Defendant breached Section 19.03 of the Indenture by failing to provide proper notice to Defendant of the Roll-Up Loans.

4680194-1

51. By virtue of the Defendant's breach, Plaintiffs have been damaged in an amount to be determined at trial, but at least $1,000,000, plus accrued interest, attorneys' fees, and costs.

## FOURTH CLAIM FOR RELIEF

### (Gross Negligence)

52. Plaintiffs repeat and realleges all of the allegations set forth in paragraphs 1 through 51 above as if fully set forth herein.

53. By failing to deliver the March 15, 2018 notice to Plaintiffs, in accordance with the terms of the Indenture, Plaintiffs were deprived of the opportunity to participate in the Roll-Up Loans.

54. By virtue of the Defendant's gross negligence, Plaintiffs have been damaged in an amount to be determined at trial, but at least $1,000,000, plus accrued interest, attorneys' fees, and costs.

WHEREFORE, Plaintiffs Sabby Volatility Warrant Master Fund, Ltd. and Sabby Healthcare Master Fund, Ltd. respectfully request that the Court enter judgment in their favor and against Defendant as follows:

(i) On the First Claim for Relief, specific performance to allow the Plaintiffs to participate in the Roll-Up Loans on a pro rata basis.

(ii) On the Second Claim for Relief, judgment against the Defendant, in the amount to be determined at trial, but at least $1,000,000 plus accrued interest, attorneys' fees and costs;

(iii) On the Third Claim for Relief, judgment against the Defendant, in the amount to be determined at trial, but at least $1,000,000 plus accrued interest, attorneys' fees and costs;

4680194-1

(iv)     On the Fourth Claim for Relief, judgment against the Defendant, in the amount to be determined at trial, but at least $1,000,000 plus accrued interest, attorneys' fees and costs; and

(v)     For such other relief in favor of Plaintiffs and against the Defendant that this Court deems just, equitable and proper, together with the costs and disbursements of this action.

Dated: New York, New York
      July 13, 2018

OLSHAN FROME WOLOSKY LLP
*Attorneys for Plaintiffs*


By:   /s/ Jonathan T. Koevary
      Adam H. Friedman
      Jonathan T. Koevary
      1325 Avenue of the Americas
      New York, New York 10019
      (212) 451-2300

4680194-1